IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Earl D. Mack, Jr.,                                          Case No. 3:06CV7028

                Plaintiff,

      v.                                                  ORDER

Dwight A. Holcomb, *et al.*,


                Defendants.

     Earl Mack brought suit against Dwight Holcomb, Kenneth Morckel, Carol Nolan Drake, the

Ohio Department of Public Safety (ODPS), and the Ohio Department of Administrative Services

(ODAS) alleging violations of federal law, under 42 U.S.C. §§ 1981 and 1983, Title VII, 42 U.S.C.

2000e *et seq*., and various state law claims. Pending is defendants' motion to dismiss under Fed. R.

Civ. P. 12(b)(1) and 12(b)(6). Jurisdiction exists under 28 U.S.C. §§ 1331 and 1367.

     For the following reasons defendants' motion will be granted in part and denied in part.[1]

## Background

     Mack is an African American employed by the ODPS. Holcomb is the Chief and Executive

Deputy Director of the Ohio Investigative Unit for the ODPS. Morckel is the Director of the ODPS.

Drake is the Director of the ODAS.

     Since 1997, Mack has worked as the agent-in-charge (AIC) of the Toledo Enforcement

District office of the ODPS. As AIC, Mack oversaw and supervised other enforcement agents. In

---

[1]

In their motion to dismiss, defendants do not challenge Mack's 42 U.S.C. §§ 1981 and 1983 claims
alleging discrimination on the basis of race. They, moreover, do not challenge in this motion Mack's
Title VII claims against ODPS or ODAS.

December, 2004, ODPS began an internal investigation of Mack as a result of charges made against him by his subordinates.

Mack believed the investigation to be racially motivated and filed charges with the EEOC on March 14, 2005. ODPS temporarily transferred Mack from the Toledo office to its Columbus office in September, 2005.

Mack, unhappy with his involuntary temporary transfer from Toledo to Columbus, appealed to the Ohio State Personnel Board of Review (OSPBR). In his appeal, Mack asserted ODPS did not make the transfer in good faith or for the efficient operation of the ODPS branch in Columbus.[2] He also filed a second EEOC complaint alleging ODPS transferred him in retaliation for filing the original EEOC complaint.

In October, 2005, Holcomb issued a written reprimand against Mack finding "unbecoming-performance of duties." Mack alleges this reprimand was retaliatory because ODPS Assistant Deputy Directors Scott Pohlman and Jerry Barber determined that ten out of the twelve charges made against Mack were either unfounded or unsubstantiated. Mack amended his EEOC complaint to allege that this written reprimand was an act of racial discrimination and retaliation.

ODPS began a second administrative investigation against Mack in November, 2005. This investigation resulted in Holcomb assessing Mack a three day fine for alleged violations of his responsibility of command. Mack appealed this fine. That appeal is pending.

In December, Mack applied for the position of Deputy Director for the Investigative Unit at ODPS. Mack claims despite the fact that he was the most qualified applicant for the position and

---

[2] Mack's appeal is pending. Defendants have agreed not to hire a replacement for Mack's position at the ODPS in Toledo pending the outcome of his appeal.

had the most experience, ODPS awarded the job to another employee. He alleges that because this employee is Caucasian, ODPS's acts were discriminatory and racially motivated. Mack filed a further charge alleging racial discrimination with the EEOC.

In January, 2006, ODPS permanently transferred Mack to its Columbus, Ohio branch. Mack claims ODPS permanently transferred him without providing him with notice or an opportunity to object. He alleges ODPS consequently acted in violation of Ohio Revised Code § 124.33. Mack's appeal of the permanent transfer is pending before the OSPBR. He also amended his EEOC complaint to allege ODPS's permanent transfer was an act of retaliation.

## Discussion

## I. 42 U.S.C. §§ 1981 and 1983 Claims

Mack alleges defendants violated 42 U.S.C. § 1981 by purposefully discriminating against him on account of his race. He has also brought claims alleging violations of the First Amendment and Fourteenth Amendment due process and equal protection clauses against defendants under 42 U.S.C. § 1983. Mack seeks both damages and injunctive relief.

Regardless of the relief sought, the Eleventh Amendment bars this court from assuming jurisdiction over § 1981 and § 1983 claims asserted against a state and its agencies. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). Thus, Mack's § 1981 and § 1983 claims against the ODPS and the ODAS are barred under the Eleventh Amendment.

Actions for damages against a state official in his or her official capacity are essentially actions against the state, and will be barred by the Eleventh Amendment in the same manner. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, to the extent Mack seeks monetary

3

relief against the defendants acting in their official capacity as agents of the State of Ohio, such claims are also barred by the Eleventh Amendment. *Id*.

However, under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment does not bar suits seeking to "enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (citing *Ex parte Young*).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal citation omitted). Mack seeks prospective relief against defendants in his complaint for alleged ongoing violations of federal law. Therefore, Mack's claims seeking injunctive relief against the individual defendants in their official capacity are not barred by the Eleventh Amendment.

Finally, to the extent that Mack brings § 1981 and § 1983 claims against Holcomb and Morckel in their individual capacities, claims based on alleged wrongdoings as an individual are not barred by the Eleventh Amendment. *Johnson*, 215 F.3d at 571.

## II. Substantive Due Process

Defendants argue Mack's § 1983 substantive due process claim fails because he did not allege an infringement of a fundamental right.

"Substantive due process claims involve allegations of (1) deprivations of a particular constitutional right and (2) actions that 'shock the conscience.' " *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 769 (6th Cir. 2005) (internal citation omitted).

4

Mack has alleged a violation of the First Amendment which is a constitutional right protected under the Fourteenth Amendment's Due Process Clause. *Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir. 2000).

To meet the second element of a prima facie substantive due process claim, a plaintiff must allege that "the challenged action was so 'egregious' that it can be said to be 'arbitrary in the constitutional sense.'" *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). This standard at a minimum "requires a showing beyond mere negligence." *Id.*

Mack alleges that defendants acted knowingly in retaliating against him. Thus, he states a claim for substantive due process under the Fourteenth Amendment for violation of his First Amendment rights.

Mack also alleges in his complaint that defendants violated his substantive due process rights by transferring him. This claim fails because Mack does not have a constitutional right entitling him to remain at the Toledo, Ohio, ODPS branch. *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) ("Substantive due process 'affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (citing *Michael H. v. Gerald D.*, 491 U.S. 110, 122 (1989)) (internal citation omitted).

### III. Title VII

Mack's Title VII claims against ODPS under 42 U.S.C. § 2000e *et seq.* survive the motion to dismiss. Defendants acknowledge plaintiff has exhausted his administrative remedies on these claims.

Mack's Title VII claims, however, against the individual defendants, Holcomb, Morckel, and Drake, should be dismissed. Individual employees and supervisors are not liable under Title VII. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997).

### IV. Ohio Law Claims

Defendants correctly point out that this court lacks jurisdiction over Mack's state law claims against the individual defendants. Sections 9.86 and 2743.02(F) of the Ohio Revised Code provide the individual defendants with immunity on these claims unless brought in state court. Mack, moreover, does not contest that the Eleventh Amendment bars his claims under §§ 4112.02 and 4112.99 of the Revised Code against ODPS and ODAS. *Donahoo v. Ohio Dept. of Youth Services*, 237 F.Supp.2d 844, 875 (N.D. Ohio 2002). Accordingly, Mack's Ohio law claims against defendants will be dismissed without prejudice to any right he may have to file those claims in a proper forum.

### V. Qualified Immunity

Defendants assert qualified immunity on Mack's procedural due process claim and First Amendment retaliation claim under § 1983.

Qualified immunity protects public officials sued in their individual capacity from civil liability while performing discretionary functions, unless their conduct violates a right clearly established at the time of the alleged violation. *Washington v. Newsom*, 977 F.2d 991, 993 (6th Cir. 1992).

6

Qualified immunity requires a two-part analysis. *Owensby v. City of Cincinnati*, 414 F.3d 596, 602 (6th Cir. 2005). First, the facts, viewed in the light most favorable to the plaintiff, must demonstrate that the defendant's conduct violated a constitutional right. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A claim which does not show violation of a constitutional right fails. *Id.* If plaintiff sufficiently alleges a constitutional violation, defendant may be entitled to qualified immunity if the constitutional right was not clearly established when the violation occurred. *Id.*

A plaintiff has the burden of establishing that defendants are not entitled to qualified immunity. *Washington v. Newsome*, 977 F.2d 991, 995 (6th Cir. 1992). A plaintiff must demonstrate that the defendant has violated a "a right so clearly established that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct." *Id*.

## A. Procedural Due Process

### 1. Constitutional Violation

Mack claims defendants violated his Fourteenth Amendment procedural due process rights by failing to provide him with notice[3] and a hearing before ODPS permanently transferred him.[4]

To state a procedural due process claim, a plaintiff must allege a deprivation of a life, liberty, or a property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). A property

---

[3]

Ohio law provides for notice prior to a permanent transfer. O.R.C. § 124.33 and O.A.C. § 123:1-25-01. Mack attached to his complaint a copy of the letter ODAS sent to him after his initial temporary transfer informing him he was being transferred permanently to the Columbus office. (Ex. L).

[4]

Mack does not challenge the adequacy of the post-transfer procedure provided by Ohio law, O.R.C. § 124.33 and O.A.C. § 123:1-25-01(M).

interest is created by "existing rules or understandings that stem from an independent source such as state law." *Id*. (internal citation and quotation omitted).

If a plaintiff establishes a property interest, the court next determines "what process is due." *Leary v. Daeschner*, 228 F.3d 729, 742 (6th Cir. 2000) (internal quotation and citation omitted). "This determination is one of federal law and thus is not limited by the procedures that the state may have deemed to be adequate when it created the property right." *Id.*

A court balances three factors when determining what process is required:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

A predeprivation hearing is not always required to satisfy constitutional due process. *Leary*, 228 F.3d at 742. "[T]he amount of process required depends, in part, on the importance of the interests at stake." *Id*. "In some cases, postdeprivation review may be sufficient, and no predeprivation process is required." *Id*. at 743.

Defendants do not challenge whether Mack has a property interest. Accordingly, this court assumes a protectable property interest exists. *Gilbert v. Homar*, 520 U.S. 924, 929 (1997).

The property interest at issue is created by O.R.C. § 124.33 and O.A.C. § 123:1-25-01(J).[5] An employee has the right to remain in his or her current location unless a transfer would increase the efficiency of the transferee branch.

In their motion to dismiss, defendants argue Ohio law provides Mack with sufficient process to meet the constitutional requirements of the Due Process Clause.

Analysis of Mack's claim and defendants' motion to dismiss involves consideration, first, of the process already provided by Ohio statute and, second, whether additional process is required under the Fourteenth Amendment's Due Process Clause.

### a. Process Provided by Ohio Law

Section 124.33 provides that "[t]he appointing authority requesting the permanent transfer shall notify the employee and the director in writing of the request to transfer." The statute requires the director of administrative services independently approve the request to  transfer permanently an "employee in the classified service of the state" to another office within the state. O.R.C. § 124.33.  As discussed above, to approve a permanent transfer the director must determine "only if [the transfer] is determined to be necessary for the efficient operation of the work unit *to which the employee would be transferred*." O.A.C. §123:1-25-01(J) (emphasis supplied). If the director approves the transfer, then the state employee receives notice prior to the transfer. O.R.C. § 124.33 and O.A.C. § 123:1-25-01.

---

[5]

The O.A.C. §123:1-25-01(J) provides: "In the case of a request to transfer an employee permanently, the director shall approve the transfer only if it is determined to be necessary for the efficient operation of the work unit *which the employee would be transferred*." O.A.C. §123:1-25-01(J) (emphasis supplied).

If the employee objects to the transfer, the employee "may within ten days after receipt of such notice appeal the transfer to the state personnel board of review, but pending determination of such appeal shall not refuse such transfer." O.R.C. § 124.33.

While an employee is required to comply with the transfer pending this appeal, any financial harm caused by an improper transfer is alleviated by Ohio law. O.R.C. § 124.33 provides:

> If the state personnel board of review finds that the transfer is not necessary for the efficient operation of the office, department, or institution, and if the employee has moved to the new location pending his appeal, the appointing authority of the receiving office, department, or institution shall pay the actual and necessary expenses of the employee of moving to the new location and actual and necessary expenses for returning the employee to his previous location.

O.R.C. § 124.33.

### b. More Process Is Not Required

In response to defendants' motion to dismiss, Mack contends that he was entitled to a pre-transfer hearing of some sort before ODPS permanently transferred him. Mack relies on *Leary v. Daeschner*, 228 F.3d 729, 742 (6th Cir. 2000).

In *Leary*, the court found that the plaintiffs' collective bargaining agreement (CBA) created a property interest in the plaintiffs' teaching positions at a particular school. *Id.* at 742. The court noted that this CBA limited the school superintendent's authority to transfer to "cases in which there was good cause." *Id.* It noted that an involuntary transfer for cause under the CBA "carries with it significant costs for the transferee, including stigma, loss of professional esteem, and the difficulty of rebuilding relationships and professional status within the new school." *Id.* at 743. After balancing the *Mathews* factors, it determined that the Fourteenth Amendment's Due Process Clause required the school to provide a pre-transfer hearing. *Id.*

10

Relying on *Leary*, Mack argues the Due Process Clause requires defendants to provide a pre-transfer hearing before he is permanently transferred to the Columbus branch. He alleges a permanent transfer will harm him by decreasing his job responsibilities, changing his job location, and reducing his pay. Mack asserts that like the transfer in *Leary*, a permanent transfer carries a negative stigma with it. He argues a pre-transfer hearing would ensure his transfer is not disciplinary or designed to "harass an employee into quitting his position." (Pl's. Opp. Motion at 18). Therefore, Mack claims defendants violated his procedural due process rights by failing to provide a pre-transfer hearing.

Accepting the facts alleged in the complaint as true and making all reasonable inference in favor of the plaintiff, Mack's contention is to be tested against each of the three factors recited in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to determine whether due process requires a pre-transfer hearing.

### i. Private Interest Affected by State Action

The first *Mathews* factor is the nature of the property interest at issue. 424 U.S. at 335. As discussed above, there is no dispute that Mack has a property interest arising under O.R.C. § 124. 33 and O.A.C. § 123:1-25-01(J). He has a right not to be transferred unless necessary for the efficient operation of the transferee office.

A transfer is a less drastic personnel action than termination. *See Farkas v. Ross-Lee*, 727 F.Supp. 1098, 1103 (W.D. Mich 1989). Even considering the alleged hardship Mack's transfer involves - a move from Toledo to Columbus, lost responsibility, and lost pay - he still has a job.

11

Ohio law, moreover, does not classify a transfer for efficiency as a disciplinary action.[6] O.R.C. § 124.34(A). Accordingly, a non-disciplinary transfer, unlike a transfer for cause, does not carry with it a negative stigma. *See Ryman v. Reichert*, 604 F.Supp. 467, 471 (S.D. Ohio 1985) (no risk of suffering stigma if job is lost from abolishment rather than discharge).

Mack's interest differs from the plaintiffs' interest in *Leary* in which the CBA provided for transfers for good cause and efficiency. A "just cause" termination or transfer has constitutional implications because it conveys a negative stigma. *Leary*, 228 F.3d at 743. A transfer for purposes of efficiency is not similarly stigmatizing. *Id*. ("involuntary transfer for cause carries with it significant costs for the transferee, including stigma").

Thus, Mack's interest is weaker than the plaintiffs' interest in *Leary*. *Id*.

### ii.  Risk of Erroneous Deprivation Under Procedures Used and Probable Value of Additional Procedures

As discussed above, § 124.33 provides Mack with the right to notice before permanent transfer and the opportunity to appeal after the transfer. *See also* O.A.C. § 123:1-25-01. Additionally, any transfer must be pre-approved by an independent director who bases his decision only on whether the transfer will increase the efficiency of the transferee office. O.A.C. §123:1-25-01(J). Thus, the issue is whether a pre-transfer hearing is required under the Due Process Clause.

---

[6]

Mack relies on *Thompson v. District of Columbia*, 428 F.3d 283, 288 (D.C. Cir. 2005), to argue this court should look beyond the defendants' stated reasons to determine whether the action taken against him was disciplinary. In *Thompson*, the court needed to determine whether the plaintiff was terminated for cause or laid off because both resulted in unemployment. *Id*. at 288. This distinction was important in *Thompson* because if plaintiff was terminated for cause rather than laid off for financial reasons, the plaintiff would have been entitled to a pre-termination hearing. *Id*. I need not make this distinction because Ohio law provides for transfer only when it will increase efficiency.

12

Defendants argue a pre-transfer hearing will not enhance the procedures already provided by Ohio law. An employee subject to transfer, unlike an employee charged with a disciplinary infraction, is not likely to be in a position to assess the operational needs behind the transfer decision. Defendants contend, moreover, that a transfer motivated by disciplinary considerations is nonetheless lawful if it also enhances efficiency.

Mack argues that a pre-transfer hearing will ensure that considerations of efficiency will in fact be controlling, rather than motives that are arbitrary, capricious, disciplinary, or discriminatory.

Arguably, an employee might be able to provide some information about operational needs at a pre-transfer hearing. But it is far more likely that the decision maker's knowledge of operational and managerial needs at the other location will vastly exceed the employee's understanding of those factors.

While an opportunity for Mack to present evidence that he will not increase the efficiency of the transferee branch might be useful, such input will not necessarily be determinative. *See Stotts v. Ohio DOT*, 1985 Ohio App. LEXIS 5375 (1985) (unpublished disposition). Thus a pre-transfer hearing would be of minimal value at best.

Additionally, the risk of erroneous deprivation under the current procedures provided by Ohio statute is minimized by the extensive post-transfer procedures available under Ohio law. O.R.C. § 124.33; O.A.C. § 123:1-25-01. A pre-transfer hearing or opportunity to be heard will, accordingly, not necessarily decrease the risk that an employee will be transferred for improper reasons.

13

### iii. Governmental Interest

The final *Mathews* factor is the government's interest "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The governmental interest in unencumbered transfers for efficiency affects its interest in maintaining efficient and cost-effective operations. Adding pre-transfer procedure will add time and expense, and, possibly, delay to the transfer process without significantly decreasing the risk of an erroneous deprivation.

After considering all of the *Mathews* factors, the balance tips in the favor of defendants. A pre-transfer hearing is not required by the Due Process Clause. Therefore, Mack fails to state a procedural due process claim against the defendants.

### 2. Clearly Established Law

Because Mack  fails to demonstrate defendants violated his procedural due process rights, I need not address the second part of a qualified immunity inquiry on this claim. *Purisch v. Tennessee Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996).

Therefore, Holcomb, Morckel, and Drake are entitled to qualified immunity on Mack's procedural due process claims against them in their individual capacities.

14

**B. First Amendment**

**1. Constitutional Violation**

Mack argues defendants violated the First Amendment by transferring him in retaliation for his speech [i.e. his allegations of racial discrimination].

To establish a claim under § 1983 for a violation of the First Amendment, a public employee must prove:

> 1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Leary v. Daeschner,* 228 F.3d 729, 737 (6th Cir. 2000).

If the plaintiff establishes the three elements of a First Amendment retaliation claim, the burden of persuasion shifts to the defendants to show by a preponderance of the evidence that they "would have taken the same action even in the absence of the protected conduct." *Leary*, *supra*, 228 F.3d at 737; *see also Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001).

To show that speech is protected by the First Amendment a public employee must demonstrate, first, the speech "touched on matters of public concern," and, second, his or her "interest 'in commenting upon matters of public concern . . . outweigh[s] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Leary*, 228 F.3d at 737 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Determination of whether a public employee's speech addresses a matter of public concern depends on "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). This is an issue of law for the court to decide. *Johnson*, 215 F.3d at 584.

### a. Whether Mack's Speech is Constitutionally Protected

Defendants contend Mack's First Amendment claim fails because his speech was a matter of private, not public concern. In particular, they argue an internal employee grievance is not speech addressing a matter of public concern.

I disagree. "[R]acial discrimination is inherently a matter of public concern." *Perry v. McGinnis*, 209 F.3d 597, 608 (6th Cir. 2000). To the extent Mack alleges he made internal grievances regarding racial discrimination such statements – although made in the form of an internal grievance – are a matter of public concern. *Id*. at 609 ( "[A] complaint of racially disparate treatment, which consisted of an internal grievance is a matter of public concern.").

Defendants also argue Mack's EEOC complaints are not protected speech under the First Amendment. They assert "the Sixth Circuit has repeatedly held that retaliation for filing EEOC or similar discrimination charges is not independently actionable under § 1983."

Defendants are incorrect. "[A]n employee may sue her public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution." *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984); *see also Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 794-95 (6th Cir. 2000); *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 169 (6th Cir. 2004).

Therefore, Mack has alleged defendants retaliated against him for speech that addresses a matter of public concern.

17

### b. The Balance Between Private and Public Interest

Even if a public employee speaks as a matter of public concern, his interest in doing so must outweigh the agency's interest in providing efficient services. *Pickering*, 391 U.S. at 568.

Defendants do not address this issue, and I will assume, *arguendo,* that Mack's interest in his speech outweighs any claim of efficiency.

### c. Retaliation

Defendants, moreover, do not challenge Mack's First Amendment claims on any other ground at this time. Viewing the compliant in the light most favorable to Mack, he has stated a claim for retaliation under the First Amendment. He alleges defendants transferred him in retaliation for his protected speech. Mack claims that this transfer caused him, *inter alia*, lost income and harm to his professional status. Finally, the harm alleged by Mack would chill a person of ordinary firmness from speaking. *Leary v. Daeschner*, 349 F.3d 888, 901 (6th Cir. 2003) ("Clearly, involuntary transfer from one job to another is action 'that would likely chill a person of ordinary firmness from continuing to engage in that constitutionally protected activity.'" (internal citation omitted)).

Accordingly, Mack has adequately alleged a First Amendment violation.

### 2. Clearly Established Law

The issue for purposes of qualified immunity is whether Mack's First Amendment rights were clearly established at the time of the alleged violation.

Defendants argue that no case holds that an EEOC complaint alleging discrimination supports a public employee's First Amendment retaliation claim. In the alternative, defendants ask the court to require a more definite statement.[7]

Plaintiff has the burden of establishing the right was clearly established. *Washington*, 977 F.2d at 995. "To determine whether a right was clearly established for purposes of qualified

---

[7]

I need not address this alternative because, as discussed below, defendants are not entitled to qualified immunity on this claim.

19

immunity, we 'look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 824 -25 (6th Cir. 2001) (quoting *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 579 (6th Cir. 1997)).

In *Perry v. McGinnis*, the Sixth Circuit held that "a complaint of racially disparate treatment, which consisted of an internal grievance is a matter of public concern." 209 F.3d at 609. Thus, that leaves no doubt that defendants were on clear notice that Mack's speech would be considered a matter of public concern protected by the First Amendment. That, however, does not end the analysis of whether defendants violated a clearly established right.

Under the *Pickering* balancing test, a public employee's interest in his or her speech must outweigh a state employer's interest in its efficient operations for the employee's speech to be protected by the First Amendment. 391 U.S. at 568. The Sixth Circuit has acknowledged the difficulty a court may have in finding a right is clearly establishing when a balancing test like *Pickering* is required to establish the violation. *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 232-33 (6th Cir. 2005).

A public employee's interest in making allegations of racial discrimination goes to the heart of First Amendment jurisprudence. *See Connick v. Myers*, 461 U.S. 138, 148 n.8 (1983) ("right to protest racial discrimination [is] a matter inherently of public concern"). The employee's interest in making allegations concerning racial discrimination is great and would be obvious to any employer. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 585 (6th Cir. 2000) (public employee's interest in speech regarding affirmative action program outweighs employer's interest at least for summary judgment); *Love-Lane v. Martin*, 355 F.3d 766, 780 (4th Cir. 2004) (public employee's

20

interest and community's interest in her speech alleging racial discrimination outweighed public employer's interest in efficient operations). Thus, the law was clearly established that an employee's interest in speech regarding racial discrimination would outweigh a public employer's interest in efficiency.

Finally, the Sixth Circuit in *Leary* held that "an involuntary transfer would have a sufficient chilling effect to qualify as an adverse action under the First Amendment retaliation." *Leary*, 228 F.3d at 738 (citing *Boger v. Wayne County*, 950 F.2d 316, 321-23 (6th Cir. 1991)). Again, defendants had notice that transferring an employee in retaliation for his speech would be considered an adverse action under the First Amendment.

Accordingly, Mack has alleged the defendants violated a right clearly established under the First Amendment. Therefore, defendants' motion for qualified immunity is denied with respect to Mack's claims alleging violations of the First Amendment against the individual defendants sued in their individual capacities.

### Conclusion

For the foregoing reasons, it is therefore,

ORDERED THAT defendants' motion to dismiss be, and the same hereby is:

1) granted with respect to all 42 U.S.C. §§ 1981 and 1983 claims asserted against ODPS and ODAS;

2) granted with respect to all 42 U.S.C. §§ 1981 and 1983 asserted against Holcomb, Morkel, and Drake in their official capacities to extent Mack seeks monetary relief against them;

3) granted on all Title VII claims asserted against Holcomb, Morkel, and Drake;

4) granted on all Ohio law claims brought against all defendants;

21

5) granted as to Mack's claims under § 1983 alleging violations of the Fourteenth Amendment Procedural Due Process Clause against the individual defendants sued in their individual capacities;

6) overruled as to Mack's claims under § 1983 alleging violation of the First Amendment against the individual defendants sued in their individual capacities;

7) granted with respect to Mack's Fourteenth Amendment substantive due process claim against all defendants for transferring him;

8) and otherwise denied.

9) A telephone scheduling conference is set for July 28, 2006 at 9:45 a.m.

So ordered.

<u>/s/ James G. Carr</u>
James G. Carr
Chief Judge